Argued and submitted November 23, 1993, reversed and remanded in part;
otherwise affirmed February 2, 1994

## Richard W. TYDEMAN
and U.S. Hydro Power, Inc.,
*Appellants,*

*v.*

## Thomas J. FLAHERTY,
*Respondent,*

*and*

## Gordon L. HALL,
Robert D. McReynolds, Sr.,
and Kathleen McReynolds,
*Defendants.*

(89-10-284; CA A72384)
868 P2d 755

Melinda B. Wilde argued the cause and filed the brief for appellant.

James C. Tait argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

In this legal malpractice action, plaintiffs appeal a judgment dismissing their sixth amended complaint for failure to state a claim.[1] ORCP 21A(8). We reverse.

■ In reviewing the granting of a motion to dismiss for failure to state a claim, we assume the truth of all allegations, as well as any inferences that may be drawn from them. *Oksenholt v. Lederle Laboratories*, 294 Or 213, 215, 656 P2d 293 (1982). We disregard allegations that are conclusions of law. *Emmert v. O'Brien*, 72 Or App 752, 754, 697 P2d 222 (1985).

Plaintiffs' eighth and ninth claims for relief span 37 pages. Because we necessarily must discuss plaintiffs' factual allegations in our review of each claim, we limit our introductory discussion of the facts taken from those claims.

In 1986, Tydeman and Robert McReynolds (McReynolds) retained Flaherty to represent them and their corporation, U.S. Hydro Power, Inc. (USHP), a steel fabricator, regarding a default judgment against USHP. McReynolds, Tydeman and USHP also retained Flaherty to file a lawsuit on their behalf to recover money spent on labor and material on a contract between USHP and third parties not part of this action. The third parties prevailed at trial.

In 1989, Tydeman filed a complaint against Flaherty for attorney negligence. He later amended the complaint to add USHP as a plaintiff, to join additional defendants and to assert other claims. Flaherty successfully moved to dismiss plaintiffs' seventh, eighth and ninth claims for relief for failure to state a claim and failure to file the complaint within the applicable statute of limitations. The trial court gave plaintiffs additional opportunities to amend, and they eventually filed a fifth amended complaint. On Flaherty's motions, the trial court again dismissed plaintiffs' seventh,

---

[1] Plaintiffs' sixth amended complaint has nine claims. Claims 1 through 6 assert claims only against defendants Robert and Kathleen McReynolds. A default judgment was entered against them on those claims, and they are not parties on appeal. Claim 7 asserts a claim only against defendant Hall. Plaintiffs do not assign error to the trial court's dismissal of that claim. Plaintiffs' eighth claim for relief has three "counts." Count 1 alleges a distinct claim; count 2 alleges two distinct and separate claims. Each claim should have been so denominated. Plaintiffs do not assign error to the trial court's dismissal of count 3 of their eighth claim for relief.

eighth and ninth claims for relief for failure to state a claim and advised them that they had only one more opportunity to amend their pleadings. Plaintiffs filed this 58-page amended complaint, but the trial court concluded that it, too, failed to state a claim for relief and again granted the motions to dismiss plaintiffs' seventh, eighth and ninth claims.

Plaintiffs make numerous assignments of error. We first discuss their assignment that the trial court erred in dismissing count 2 of plaintiffs' eighth claim for relief, because our discussion of that claim also provides the basis for our discussion of count 1. Count 2 of the eighth claim for relief contains allegations of attorney negligence. According to the factual allegations and inferences that may drawn from them, an attorney-client relationship existed between Flaherty, McReynolds, USHP and Tydeman. Flaherty failed to obtain Tydeman's informed consent for Flaherty's representation of multiple clients having conflicting interests. Flaherty knew that Tydeman and McReynolds had agreed to be equally responsible for any of USHP's liabilities. He knew that Tydeman had assets sufficient to pay a default judgment that had been entered against USHP and McReynolds and Tydeman individually. He also knew that McReynolds had transferred his assets to his wife just before USHP's incorporation and that USHP did not have enough assets to pay that judgment. Flaherty did not tell Tydeman that McReynolds had insufficient assets with which to pay the judgment and that the judgment creditor was aware of that fact. Flaherty also failed to advise Tydeman that he could challenge McReynolds' earlier transfer of assets and that he had a right to seek contribution from McReynolds and USHP. Plaintiffs allege that, but for Flaherty's failure to advise Tydeman of his right to contribution, Tydeman would have obtained a collectible judgment against McReynolds and USHP. The gist of those allegations is that Flaherty breached his duty to exercise reasonable care in protecting Tydeman's economic interests. *See Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992).

In pleading a traditional attorney negligence action, the plaintiff must allege facts showing a duty that runs from the defendant to the plaintiff, a breach of that duty, causation and a resulting harm to the plaintiff measurable in damages.

*See Stevens v. Bispham,* 316 Or 221, 227, 851 P2d 556 (1993). Flaherty does not contend that there was no duty or breach. He argues, however, that in pleading a malpractice claim, a plaintiff must plead both the underlying claim and the malpractice action, and that, but for the attorney's negligence, the plaintiff would have had a more favorable result in the underlying claim. That is the correct standard for pleading the element of causation if a client claims attorney negligence in prosecuting or defending litigation. *Harding v. Bell,* 265 Or 202, 204, 508 P2d 216 (1973).

■ As we noted earlier, *see* note 1, in reviewing plaintiffs' complaint, we have identified potential claims that were not separately pleaded. The first theory of negligence in count 2 of plaintiffs' eighth claim for relief does not assert that Flaherty was negligent in actually prosecuting or defending litigation. Nonetheless, we apply the standard set forth in *Harding v. Bell, supra,* because there would be no causal link between the breach of duty and the alleged harm unless Tydeman would have been successful in obtaining a judgment for contribution, but for Flaherty's negligence. *See Bennet v. Boyd,* 89 Or App 659, 750 P2d 531, *rev den* 305 Or 671 (1988). In this case, plaintiffs allege[2] that a default judgment was entered against USHP, McReynolds and Tydeman, and that Tydeman alone paid that judgment. They allege that Flaherty failed timely to advise Tydeman of his right to seek contribution. Plaintiffs allege that Tydeman would have timely sought and received a judgment for contribution against McReynolds and USHP, if he had been advised of his right to do so.

■ Plaintiffs' allegations, and the reasonable inferences that may be drawn from them, sufficiently allege that plaintiffs had a claim for contribution, and that Tydeman would have prevailed on that claim. *See* ORS 18.430. We conclude that plaintiffs have adequately alleged the element of causation: that but for Flaherty's failure to advise, Tydeman would

---

[2] Because the allegations in plaintiffs' complaint are interspersed with conclusions of law, superfluous language and are repetitive, we do not quote them directly. ORCP 16B requires that an action be stated in plain and concise language. Plaintiffs have failed to make any apparent effort to do that. We spent considerable time and effort in an attempt to distill from plaintiffs' indiscriminate language whether there lurks a cause of action somewhere in the verbal jungle.

have asserted a successful claim for contribution against McReynolds and USHP.

■■ The next issue is whether plaintiffs have sufficiently pleaded damages. When a plaintiff's theory is that the defendant's negligence caused the loss of a good cause of action against a third party, the plaintiff has suffered no damage unless the lost judgment would have some value. *Hammons v. Schrunk et al*, 209 Or 127, 135, 305 P2d 405 (1956); *Ridenour v. Lewis*, 121 Or App 416, 419, 854 P2d 1005, *rev den* 317 Or 583 (1993). Here, plaintiffs allege that Tydeman, individually, fully satisfied the default judgment in the amount of $24,813.43. They allege that, in 1988, USHP disposed of assets worth $2,500, and that Tydeman could have collected that amount from USHP in an action for contribution. Plaintiffs also allege that Tydeman could have obtained a collectible judgment against McReynolds for one-half of the amount Tydeman paid to the judgment creditor. A reasonable inference from plaintiffs' allegations is that the contribution claim against McReynolds had a face value of one-half of $24,813.43, less any contributions from USHP.

Flaherty argues that, because plaintiffs also allege that McReynolds had no significant assets, they have not pleaded facts showing that they could collect a judgment for contribution. Flaherty is correct in asserting that plaintiffs have made seemingly conflicting allegations. However, plaintiffs have pleaded facts sufficient to show that they had a claim for contribution against McReynolds, and that they would have prevailed on it. A judgment may have value because it is collectible from the judgment debtor's prospective assets. *Ridenour v. Lewis, supra*, 121 Or App at 419. Therefore, plaintiffs have pleaded facts sufficient to allege the element of damages.[3] We conclude that plaintiffs have stated a claim for attorney negligence.

■ The next theory in count 2 of plaintiffs' eighth claim for relief contains allegations that Tydeman entered into an agreement with the judgment creditor to extend the execution of the judgment for six months. That agreement required

---

[3] Plaintiffs allege that Tydeman suffered additional damages as a result of Flaherty's negligence, including non-economic medical damages. Because we conclude that plaintiffs have adequately pleaded the element of damages, we do not discuss those additional allegations.

Tydeman to issue a trust deed to the judgment creditor on two parcels of land he owned. He instructed Flaherty to issue the trust deed and deliver it to the creditor. However, Flaherty sent a trust deed to the judgment creditor covering only one parcel, knowing that the creditor would execute the judgment if Tydeman did not comply with the terms of the agreement. Flaherty told Tydeman that he had delivered a conforming trust deed. The creditor immediately executed the judgment after receiving a trust deed covering only one of Tydeman's properties. As a result, Tydeman suffered damages, because he sold one of his properties in bankruptcy at a price $8,000 below market value to satisfy the judgment. Tydeman also alleges that, but for Flaherty's negligence, the agreement with the judgment creditor would have been honored, and Tydeman would have obtained financing secured by his real property sufficient to pay the judgment. We conclude that those allegations sufficiently allege each element necessary to a claim for attorney negligence. Flaherty had a duty as Tydeman's attorney to exercise reasonable care in preparing and delivering a trust deed that conformed to the agreement between Tydeman and the judgment creditor. Flaherty breached that duty by preparing a nonconforming trust deed. Tydeman was harmed as a result of Flaherty's breach of that duty. *See Hilt v. Bernstein,* 75 Or App 502, 510, 707 P2d 88 (1985), *rev den* 300 Or 545 (1986).

■    We do not read Flaherty's arguments as challenging the adequacy of the allegations of duty, breach or causation. However, he contends that plaintiffs' allegations of damages are conclusory. Although it is true that plaintiffs' allegations of damages include conclusions and redundant language, plaintiffs have pleaded facts sufficient to show *some* damage. Plaintiffs allege that the market value of one of Tydeman's real properties was $64,500, but that, because of Flaherty's negligence, it was sold in bankruptcy for $56,500. Because we conclude that those allegations sufficiently allege the element of damages, we do not discuss plaintiffs' additional allegations of damages.

Plaintiffs also assign error to the trial court's dismissal of count 1 of their eighth claim for relief, which they denominate ''Breach of Fiduciary Duty.'' Plaintiffs allege essentially the same facts in count 1 as they do in count 2.

They add allegations that a conflict of interest existed between Flaherty, Tydeman, McReynolds and USHP, and that Flaherty failed to make full disclosure of that conflict. Plaintiffs allege that Flaherty owed Tydeman a fiduciary duty of loyalty. They also allege that Flaherty's professional judgment was affected by the conflict, and that he failed to represent Tydeman with undivided loyalty.

A breach of fiduciary duty may result from a lawyer's simultaneously representing two or more clients who have a conflict of interest. *See Kidney Association of Oregon v. Ferguson*, 315 Or 135, 843 P2d 442 (1992).[4] In analyzing a claim that a lawyer has breached a fiduciary duty to a client by representing conflicting interests, we determine whether a conflict existed in fact. *See* 315 Or at 145.

Here, plaintiffs allege that a default judgment had been entered against USHP, McReynolds and Tydeman individually, and that they retained Flaherty to represent them regarding that judgment. Flaherty failed to obtain Tydeman's informed consent for the multiple representation. They also allege that there was an actual conflict of interest from the beginning of the representation, because Tydeman's interests regarding payment of the judgment were adverse to McReynolds' and USHP's.[5] The conflict existed because Flaherty could not disclose to Tydeman that McReynolds had made a potentially voidable transfer of his assets to his wife before incorporating USHP, and because Flaherty could not advise Tydeman that he could seek contribution from McReynolds and USHP.

Although not entirely clear, we understand Flaherty to argue that plaintiffs' claim for breach of fiduciary duty actually alleges an ethical violation and that the appropriate

---

[4] Although *Kidney Association of Oregon* does not involve a claim for breach of fiduciary duty, its analysis of conflicts of interest and fiduciary duties is instructive here.

[5] Plaintiffs again make conflicting allegations within a single claim. In one paragraph, they allege that the conflict of interest existed because USHP "did not have assets or cash sufficient to pay the judgment, [and] McReynolds was judgment proof." Other paragraphs allege that, had he been advised to do so, Tydeman would have sought contribution from McReynolds and obtained a collectible judgment. ORCP 16C permits the pleading of factually inconsistent claims or defenses. It does not provide authority to make inconsistent factual allegations within a single claim or defense.

remedy is a disciplinary proceeding.[6] We disagree. A lawyer may be responsible for a breach of fiduciary duty, even though that duty is also covered by the disciplinary rules. *State ex rel Bryant v. Ellis*, 301 Or 633, 638, 724 P2d 811 (1986). In this case, plaintiffs sufficiently allege the existence and breach of a fiduciary duty between Tydeman and Flaherty, causation and damages. We conclude that count 1 of plaintiffs' eighth claim for relief also states a claim for attorney negligence.

Plaintiffs next assign error to the trial court's dismissal of their ninth claim for relief, entitled "Legal Malpractice — Negligence in Conducting Litigation." Because that claim for relief alleges negligence in prosecuting and defending litigation, in reviewing plaintiffs' pleading, we analyze the sufficiency of the allegations concerning the claim or defense in the original action. *Harding v. Bell, supra*, 265 Or at 208 n 2.

Assuming the truth of plaintiffs' allegations, USHP retained Flaherty to prosecute an action on a labor lien. In 1986, Flaherty filed a complaint on USHP's behalf against two contractors and the Port of Portland, alleging that the contractors had required departures from the requirements of the underlying contract, and that USHP was entitled to recover money spent for labor and materials as a result of those departures. The contractors admitted that they had required changes, but alleged that they owed less than USHP claimed. The contractors filed a counterclaim, alleging that USHP failed to complete the contract in a timely manner, misfabricated items and failed to fabricate required items.

Plaintiffs allege that Flaherty negligently prosecuted that action and negligently defended a counterclaim.[7] First, plaintiffs allege that Flaherty negligently failed to dismiss the Port of Portland as a party, although Flaherty had information that the Port was not liable to USHP under applicable Oregon law. Because Flaherty did not dismiss the claim against the Port of Portland, a judgment was entered in favor

---

[6] Flaherty's cited cases all involve allegations of a violation of a specific disciplinary rule. Here, plaintiffs do not allege that Flaherty violated any disciplinary rule.

[7] The ninth claim charges Flaherty with negligence in several particulars. If any one of these states a claim, the motion to dismiss directed to the entire claim should have been denied.

of the Port, awarding it costs and attorney fees and dismissing it from the action.

We are unable to determine from plaintiffs' allegations what claim was asserted against the Port of Portland and what specific law shielded it from liability. Without that information, no claim is stated on this theory.

■ The majority of plaintiffs' other allegations in the ninth claim seem to be focused on Flaherty's allegedly negligent defense of the counterclaim.[8] Assuming the truth of their allegations, Flaherty failed adequately to prepare for trial by failing to "contact, depose, or subpoena for trial, witnesses who were available and known to Flaherty, and whose testimony was critical to the plaintiff's case." A USHP quality control engineer would have testified that USHP fabricated and timely delivered all items required under the contract and that all fabrications were of good quality. He would have also testified that delays, if any, resulted from specification changes requested by the contractors. Another USHP employee would have testified that all fabrications were made to specifications and that any defects resulted from those specifications. Flaherty sequestered Tydeman at trial. As a result, Tydeman could not notify Flaherty when witnesses for the defendants were being untruthful. It is reasonable to infer from plaintiffs' allegations that none of that evidence was proffered at trial, and that, if it was, plaintiffs would have had a sufficient defense to the counterclaim. Finally, plaintiffs allege that they would have prevailed on the counterclaim, but for Flaherty's negligence, and that they are entitled to money damages as a result of that negligence.

Flaherty argues that plaintiffs' allegations are insufficient to determine whether there was any connection between his alleged negligence and USHP's failure to prevail on the counterclaim at trial. We disagree. Those allegations, reasonably construed, state: (1) a duty by Flaherty to defend USHP against the counterclaim; (2) a breach of that duty; (3) causation, *i.e.*, plaintiffs would have prevailed on the counterclaim if Flaherty had put on witnesses who would

---

[8] Plaintiffs' ninth claim for relief is rife with irrelevant allegations and conclusions of law.

show that USHP delivered all required fabrications according to specifications and in a timely manner; and (4) damages, because the contractors won a money judgment against USHP on the counterclaim. *See Kirkland v. Mannis*, 55 Or App 613, 639 P2d 671, *rev den* 292 Or 863 (1982). That states a claim for negligence in defending litigation.

■ The final allegation of negligence in the ninth claim attempts to state an additional claim for attorney negligence. Plaintiffs allege that the opposing parties made a settlement offer, but that Flaherty negligently did not communicate that offer to USHP. However, plaintiffs failed to plead the required element of causation, because they do not allege that USHP would have accepted the offer but for Flaherty's negligence. *See Harding v. Bell, supra.*

Although counts 1 and 2 of plaintiffs' eighth claim for relief and their ninth claim for relief are very poorly drafted, they do state claims for attorney negligence.

Reversed and remanded as to counts 1 and 2 of eighth claim for relief and as to the ninth claim for relief; otherwise affirmed.