CHOCKTOOT, *Respondent,*
*v.*
SMITH et al, *Appellants*
(TC 74-1773-L-3, SC 24607)
571 P2d 1255

Howard K. Beebe, Klamath Falls, argued the cause and filed the briefs for appellants.

Robert H. Grant, Medford, argued the cause for respondent. With him on the brief were Grant, Ferguson and Carter and Edward W. Grant.

LINDE, J.

## LINDE, J.

Defendants, attorneys at law, appeal from a judgment in a malpractice action won by the personal representative of a decedent whom they had represented in an earlier proceeding. The case presents novel issues of procedure in legal malpractice litigation: Who, judge or jury, must decide whether an attorney's negligence harmed his client, and upon what evidence, when the negligence concerned an issue decided by a court rather than a jury?

The course of events may be briefly summarized. Defendants represented Wesley Wendell Brown in a declaratory judgment proceeding in 1972 to determine whether he was an heir of Rowley Lalo, Jr., who died intestate in 1971. Brown's claim depended on whether he was the son of James Brown, the divorced husband of his mother, Rena Chocktoot Brown. Wesley Wendell Brown was born 12½ years after the divorce, but James and Rena Brown had cohabited intermittently during that period. Both James and Rena Brown were deceased at the time of the 1972 proceeding. That case, tried before Judge Sisemore without a jury, resulted in a finding that Wesley Wendell Brown was not the son of James Brown and a decree excluding him from sharing in the Lalo estate.

Wesley Wendell Brown subsequently died. Thereafter plaintiff brought the present malpractice action against Brown's attorneys alleging that they negligently had failed to discover and present material evidence and to appeal the adverse decision in the earlier case. This malpractice case was tried before Judge Karaman and a jury. At the trial, the court found that the evidence entitled plaintiff to a directed verdict on the issue of defendants' negligence. This is not challenged on appeal. The court also ruled that it had the responsibility to decide whether defendants' negligence changed the outcome in Brown's heirship claim, since this decision would have been made by Judge Sisemore or, if a timely appeal had been filed,

[ 569 ]

by the Court of Appeals. The court concluded that Brown would have won his case but for defendants' negligence. It therefore directed a verdict for the amount stipulated to be the equivalent of Brown's share of the Lalo estate, had he been declared an heir in the earlier proceedings.

On appeal, defendants assign as error, first, the court's ruling that it, rather than the jury, was responsible for deciding the issue of "causation," *i.e.* the consequences of defendants' failure to present the omitted evidence and to appeal, and second, the court's exclusion of testimony on that issue by Judge Sisemore, the judge in the earlier case. Although these are presented as separate issues, the resolution of one follows from that of the other.

An action for damages from the negligence of an attorney is similar to other, more common actions founded on negligence. *Harding v. Bell,* 265 Or 202, 508 P2d 216 (1973). Assuming a duty of the attorney to the plaintiff and the breach of that duty, neither of which is disputed here,[1] plaintiff must show that the breach caused the injury of which he complains. Either party is entitled to a jury trial of the factual elements of the case. Or Const am art VII, §3; ORS 17.030. That includes the factual link of cause and effect, unless it is not disputed or the evidence places it beyond rational dispute. When an attorney's negligence occurred in the conduct of litigation, a jury cannot award damages for plaintiff's loss unless it concludes that the negligence led to an unfavorable or less favorable outcome for plaintiff. The jury in the malpractice case is called upon, in effect, to decide what the outcome for plaintiff would have been in the earlier case if it had been properly tried, a process that has been described as a "suit within a suit." *See Harding v. Bell, supra,* 265 Or at 205, citing sources; *Hammons v. Schrunk et al,* 209 Or 127, 305 P2d 405

---

[1] *Cf. O'Toole v. Franklin,* 279 Or 513, 569 P2d 561 (1977); *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977).

(1956). The question is on what information the jury is to reach this conclusion.

The answer seems easiest when the outcome in the first case which is at issue in the second itself depended upon a verdict, for then one can in effect let the parties argue the first case to the second jury.[2] That is the practical answer, although it is not a wholly logical one if the question were really to reconstruct what the earlier jury would have done. What is done, in effect, is to substitute for that question the customary legal fiction of an "objective" standard, in this instance the probable behavior of a reasonable jury, and to let the second jury cast itself in that role. But this solution looks less obvious when the question in the malpractice case is what would have been the outcome of an issue that in the earlier case would have been decided by a court. That question is not so readily answered by letting the jury decide what the court, or a reasonable court, would have done if the jury were that court. For the issue before the court may have been one of fact, or one of law, or both.

It can be argued that prediction of the probable behavior of the earlier court if defendants had not been negligent is a question of cause and effect like any other and, therefore, to be decided by the jury on such evidence as the parties might offer in the second case. This seems to have been assumed by the parties in the recent case of *Shields v. Campbell*, 277 Or 71, 559 P2d 1275 (1977), in which both sides called upon lawyers for opinion evidence bearing both on the issue of professional negligence and the issue of causation without differentiating between these or between questions of fact or of law. We pointed out that this occurred without objection by appellant, except for an objection that the testimony "invade[d] the province of the jury" which we found not to be well taken. But

---

[2] *See, e.g., Christy v. Saliterman,* 288 Minn 144, 179 NW2d 288 (1970); *Fuschetti v. Bierman,* 128 NJ Super 290, 297, 319 A2d 781, 785 (Law Div. 1974).

when the issue is squarely presented, this undifferentiated treatment of the several questions does not withstand closer examination. There are significant differences between the question of negligence and that of its probable consequences, and also between the probable decisions of a dispute of fact and of a dispute of law if the negligence had not occurred.

On the issue of professional negligence the predictability of adverse consequences is important evidence, but it is not the only evidence. Whether a reasonably competent lawyer would have foreseen and recognized the risk is also relevant. This was part of the purpose of the expert opinion testimony admitted in *Shields v. Campbell, supra.* In the present case, the trial court found that the evidence entitled plaintiff to a directed verdict on that issue. But when the evidence is such that reasonable people could differ whether defendant fell short of a professional standard, the jury must decide.

■■ The issue of consequences is different. As already mentioned, even when the alleged negligence concerns the conduct of a jury trial, the "causation" issue does not call for reconstructing the probable behavior of the actual jury in that trial. It does not call for bringing the jurors into court and subjecting them to examination and cross-examination to determine what they would have done if the case had been tried differently, nor does it call for expert testimony about the characteristics or the apparent attitudes of those jurors. Although the issue is stated to be the probable outcome of the first case, the second jury is permitted to decide this by substituting its own judgment for that of the factfinder in the earlier case. Once it is accepted that this is what the malpractice jury does, there is no reason why the jury (or a court when sitting without a jury) should not do the same even when the earlier factfinder was a judge, an administrative hearings officer, an arbitrator, a court-martial, or any tribunal deciding on factual grounds. However, no jury can reach its own judgment on the proper outcome of an

earlier case that hinged on an issue of law. Unlike its decision of a disputed issue of the professional standard of care, the jury cannot decide a disputed issue of law on the testimony of lawyers.

■ There is famous view that prediction or, as Justice Holmes put it, "[t]he prophecies of what the courts will do in fact," is all that is meant by law.[3] Such a view of law might imply that the probable legal ruling in the earlier case, being only a prediction of what the court would have done in fact, should be left to the jury's belief in the competing prophecies of counsel and expert witnesses. Or it might imply that the task of predicting this ruling, being "law" by definition, belongs to the court in the malpractice case. But we do not believe that the issue of causation in the malpractice case is the retrospective prediction of the actual behavior of a court on an issue of law, any more than that of a factfinder on an issue of fact. The object in the second trial is not to reconstruct what Judge Sisemore would actually have done, or what the judges of the Court of Appeals would actually have done on appeal. Rather, with respect to an issue of law in the earlier case, the issue in the malpractice case is what the outcome *should* have been if the issue had been properly presented, under the law as it was at the time or could have been convincingly argued to be.

This is an issue in the first instance for the trial judge. The legal consequences of an attorney's failure, in the earlier case, to present a timely pleading or motion or to take an appeal are matters for argument, not proof. This much is implicit in the court's review of the adequacy of pleadings negligently not filed in *Harding v. Bell, supra,* and *Milton v. Hare et al,* 130 Or 590, 280 P 511 (1929). In each of these cases, this court treated the legal sufficiency of the pleading that, according to the malpractice complaint, should have been presented by the complainant's attorney in the

---

[3] Holmes, *The Path of the Law,* 10 Harv L Rev 457, 460-461 (1897).

first case as a matter of law to be decided by the court.[4] Thus the determination of these consequences does not call for testimony by the judge or judges whose hypothetical rulings are to be retroactively "predicted," subject to cross-examination and confrontation with various precedents, nor does it call for a battle of expert witnesses under the same conditions, although of course the parties may offer the court the views of experts on a legal issue if it wishes them. If the trial judge is persuaded that the earlier court would properly have ruled favorably upon the legal step omitted by the malpractice defendant, it is his task in a jury trial to explain the effect that this favorable ruling would have had on plaintiff's case. If a ruling would have conclusively established plaintiff's victory in the earlier litigation, or if plaintiff could not have prevailed even with a favorable ruling on the particular point, then this explanation of the law in the malpractice action may have the effect of any directed verdict. But in other cases, explanation of the legal ruling alone will not conclusively determine the causation of plaintiff's loss, which will remain for the jury to decide.

■ We conclude in short, that in determining the probable consequences of an attorney's earlier negligence in a later action for malpractice, the line dividing the responsibility of judge and jury runs between questions of law and questions of fact. This is not quite the same division as that made by the trial court when faced with the necessity to decide this issue. It drew the line between those questions which would have been for a jury and those for the court in the original proceeding. But that rule would withdraw from the jury in the malpractice trial the evaluation of

---

[4]The same view has been taken with respect to the probable success of an appeal. *Sutton v. Whiteside,* 101 Okla 79, 222 P 974 (1924). *See also Spangler v. Sellers,* 5 F 882 (SD Ohio 1881), reviewing earlier decisions. *Spangler* also discusses the circumstances under which the defendant, once his negligence is established, may have the burden of persuading the factfinder that it did not cause plaintiff's loss, *id.* at 892-895, but the parties do not present that question here.

the probable outcome of purely factual disputes in all nonjury cases, including all equity, probate, or administrative proceedings. As we have stated, there is no reason why the jury cannot replicate the judgment of another factfinding tribunal, whatever its composition.

Dividing the function of judge and jury in determining the consequences of legal malpractice between questions of law and questions of fact leads to these principles for the trial of such cases:

■ The question what decision should have followed in the earlier case if the defendant attorneys had taken proper legal steps is a question of law for the court. Consequently such legal rulings are also open for briefing and review on appeal.

■ The question what outcome should have followed if defendants had conducted a proper investigation, presentation (or exclusion) of evidence, or other steps bearing on a decision based on facts remains a question of fact for the jury (or for a judge when the malpractice case is tried without a jury). Similarly, it will be reviewable on appeal only to the same extent as other factual determinations. If the alleged negligence of an attorney in an earlier case involved both legal and factual elements, it would be necessary for the trial court to separate these elements and to instruct the jury accordingly.

■ In the present case, the trial court, placing itself in the position of Judge Sisemore in the earlier proceeding, concluded that proper presentation of all available evidence would have led to a decision in favor of Wesley Wendell Brown, either at trial or, if not there, then on *de novo* review on appeal. That conclusion is one of fact from the evidence and should have been left to the jury, unless the court thought that it was beyond reasonable dispute to the point of justifying a directed

[ 575 ]

verdict on the issue of causation as well as negligence.[5] Accordingly, the case must be remanded for a new trial.

Reversed and remanded.

---

[5] In *Bryant v. Seagraves,* 270 Or 16, 526 P2d 1027 (1974), an appeal from a malpractice action, this court decided what it would have done upon *de novo* review of the earlier litigation because the parties stipulated to this procedure.